```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JAMES DORVIL,<br><br>            Plaintiff,<br><br>     v.<br><br>BURLINGTON COAT FACTORY<br>WAREHOUSE CORP. and MICHAEL<br>FAGAN,<br><br>            Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-5778<br>        (JEI/KWM)<br><br><br>**OPINION** |

**APPEARANCES:**

KARPF & KARPF, P.C.
By:  Ari R. Karpf
     Christine Elaine Burke
3331 Street Road, Suite 128
Two Greenwood Square
Bensalem, PA 19020
     Counsel for Plaintiff,

PUTNEY TWOMBLY HALL & HIRSON LLP
By:  Mary Ellen Donnelly
     Randi B. Feldheim
521 Fifth Avenue
New York, NY 10175
     Counsel for Defendants,

**IRENAS**, Senior District Judge:

   This matter comes before the Court on Defendants' Motion for Summary Judgment.  (Dkt. No. 25)  For the reasons set forth below, the Motion will be denied.

**I.**

1

The facts, and inferences drawn from those facts, are largely disputed in this case. For the purposes of this Motion, the Court resolves those disputes in favor of Plaintiff James Dorvil.[1]

Dorvil is a Haitian immigrant who speaks with a thick accent. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶¶ 1-3)[2] In 1998, Dorvil started to work for Defendant Burlington Coat Factory ("BCF"). (*Id.* at ¶ 4) Over the next several years, Dorvil climbed the corporate ladder and became the Manager of the Merchandise Accounting Department. (*Id.* at ¶¶ 7-10) In this role, Dorvil oversaw approximately 170 employees and reported directly to James Jacob. (*Id.* at ¶¶ 6, 78)

In 2006 Bain Capital Partners purchased BCF. (Defs.' L.Civ.R. 56.1(a) Statement at ¶ 28) In September 2008, Defendant Michael Fagan, a white male, started work as Vice President of Retail Control. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶ 17) Fagan supervised the entire Merchandise Accounting Department including Jacob and Dorvil. (*Id.* at ¶¶ 18-20)

Over the course of the next year, Fagan and Dorvil's relationship became strained. At first, Fagan could not always

---

[1] In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

[2] This citation refers to the parties' obligation to write statements of material facts for summary judgment motions pursuant to Local Civil Rule 56.1(a).

understand Dorvil's accent.  (*Id.* at ¶ 26)  However, Fagan eventually became accustomed to Dorvil's accent and more easily understood.  (*Id.* at ¶ 27)  Nevertheless, on approximately a weekly basis, Fagan teased Dorvil by pretending not to understand, often in front of employees Dorvil supervised.  (*Id.* at ¶¶ 27-29)  On several occasions, Fagan would humiliate Dorvil by calling other employees over to interpret and sarcastically inquire whether Dorvil was speaking French or English.  (*Id.* at ¶¶ 27-29)  This behavior undermined Dorvil's authority and ability to effectively supervise his employees.

Fagan's actions were not limited to off-handed comments about Dorvil's accent.  Fagan would refer to Dorvil as the "Haitian Black" or the "Creole".  (*Id.* at ¶ 30)  As the relationship further deteriorated, Fagan would refer to Dorvil with hostile gestures.  (*Id.* at ¶ 25)

Dorvil emphasizes two particular incidents that are demonstrative of an overall discriminatory trend.  First, in August of 2009, several police officers walked into a restaurant while Dorvil, Fagan and Expense Payables Manager Patricia Heussner were at a business lunch.  (*Id.* at ¶ 32)  Fagan exclaimed, "hide James, they might be looking for you."  (Pl.'s Br. in Opp. at Ex. J)  This was an obvious reference to Dorvil's skin color.  Although Fagan explains this incident as an off-color joke that was relevant in the context of a previous

conversation, neither Dorvil nor Heussner laughed or found the comment appropriate. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶ 32; Pl.'s Br. in Opp. at Ex. J)

The second incident occurred in October 2009 when Fagan made another racially charged "joke" in front of several coworkers at a business meeting. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶ 33) Fagan declared that if something went missing in the crowded room, the first person that people would accuse would be the black guy and pointed to Dorvil. (*Id.*) Fagan justified this comment as a teachable moment in not making assumptions. (Defs.' Br. at 6)

Other discriminatory events Dorvil alleges did not explicitly involve race, but Dorvil argues had a discriminatory motive. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶¶ 33-41) For example, Fagan neglected to invite Dorvil to meetings he was required to attend and to which all other managers received invitations. (*Id.* at ¶ 36) Furthermore, Fagan directly assigned work to Dorvil's employees without informing Dorvil.[3] (*Id.* at ¶ 37)

Before Fagan started work, Dorvil had been promoted several times and received extremely positive annual reviews. (*Id.* at ¶¶ 11-12) In fact, Steven Milstein, a former owner of BCF,

---

[3] Dorvil also asserts that Fagan revoked Dorvil's access to the company car and intimidated Dorvil to stop submitting expenses for reimbursement to which he was otherwise entitled. (*Id.* at ¶¶ 40-41)

4

commended Dorvil for his work performance. (Pl.'s Br. in Opp. at Ex. M) Despite these prior commendations, Dorvil asserts that, without prior warning, and after recently having received a positive annual review from Jacob under Fagan's supervision, Fagan placed Dorvil on a Performance Improvement Plan ("PIP") on October 6, 2009.[4] (Pl.'s L.Civ.R. 56.1(a) Statement at ¶¶ 53-56) The PIP was a disciplinary measure, which gave Dorvil a month long probationary period to improve his work performance or face termination. (*Id.* at ¶¶ 55-58) Fagan was to monitor Dorvil's performance during the PIP. (*Id.* at ¶ 59)

In response, Dorvil filed a formal written complaint of racial discrimination two days later on October 8, 2009. (*Id.* at ¶ 60) Dorvil cited the specific instances of racial discrimination in August and October of 2009 in addition to an allegation that Fagan erroneously blamed Dorvil for a twelve million dollar accounting mistake. (Pl.'s Br. in Opp. at Ex. H) Dorvil further feared that Fagan would not be impartial in implementing the PIP considering Fagan's prior discriminatory behavior. (Pl.'s L.Civ.R. 56.1(a) Statement at ¶ 63)

On November 9, 2009, Fagan and Human Resources Director Judith Mascio decided to terminate Dorvil. (*Id.* at ¶¶ 70-73) Defendants allege that shortly after terminating Dorvil,

---

[4] Defendants contend that Dorvil had many warnings of his poor performance, but failed to improve. (*See* Defs.' Br. at 17) Dorvil argues that he had never received anything but commendation from his superiors.

Defendants discovered several performance errors that are now the focus of an action brought in New York County Supreme Court. (Defs.' Reply Br. at 4-5)  Defendants assert that had those performance errors been found earlier, Dorvil would have been terminated immediately.  (*Id.* at 5)  As of this Opinion, the New York action is still pending and there has been no finding of liability.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. &*

*Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

Plaintiff filed his six count Complaint on November 12, 2009.  The claims can be grouped into four categories.  First, Plaintiff alleges a claim for racial discrimination under both 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 *et seq*.  Second, Plaintiff alleges retaliation under both § 1981 and the LAD.  Third, Plaintiff alleges a § 1981 hostile work environment claim.  Finally, Plaintiff alleges a violation of the New Jersey Wage Payment Law ("WPL") for failing to pay Dorvil for unused vacation time. N.J.S.A. 34:11-1 *et seq*.

### A.

The burden shifting analysis of Title VII applies to claims for racial discrimination and retaliation brought under § 1981 and the LAD.[5]  *See Schurr v. Resorts Intern. Hotel, Inc.*, 196

---

[5] The elements are also analyzed identically.  *Schurr,* 196, F.3d at 498-99.

F.3d 486, 498-99 (3d Cir. 1999). First, Plaintiff must establish a prima facie case by a preponderance of the evidence. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973). "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."[6] *Id.* If the defendant adequately rebuts the evidence then the plaintiff must establish by a preponderance of the evidence that the nondiscriminatory reason was merely a pretext "to coverup for a racially discriminatory decision." *Id.* at 804.

### 1.

A prima facie case for racial discrimination requires Plaintiff to show that: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action." *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797. It is not intended to be difficult to establish a prima facie case. *See Sempier v. John*son *& Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

Here, Defendants do not dispute that Dorvil belongs to a

---

[6] "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This overrides the usual factual presumption in favor of the non-moving party for the purposes of a defendant's summary judgment motion.

protected class.

Under the second element, Defendants argue that Plaintiff did not perform his job satisfactorily.  However, this argument does not directly speak to Dorvil's qualifications, but rather his performance.[7]  Therefore, the Court will address this argument in regards to showing a nondiscriminatory reason for terminating Dorvil.  As for the merits of Dorvil's qualifications, Dorvil had nearly a decade of experience with nothing but positive reviews until the PIP.  Dorvil has made a prima facie showing that he was qualified for the position.

Defendants lump the last two elements together arguing that Dorvil cannot demonstrate that the adverse employment action gave rise to an inference of discrimination.  The Court disagrees. The two racially discriminatory comments of August and October 2009 coupled with Fagan's weekly derogatory comments towards Dorvil's accent satisfy these elements.  *See Lopez v. Indiana-Kentucky Elec. Corp.*, 2006 WL 3247892, *13 (S.D. Ind. 2006) (holding that hostility towards a foreign accent is circumstantial evidence relevant to a § 1981 discrimination claim); *see also Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan J., concurring).  In addition,

---

[7] One of Defendants' principal arguments is that new BCF ownership and management required better performance from existing BCF employees.  Because Dorvil could not perform at this higher standard, Defendants terminated Dorvil.

9

Defendants replaced Dorvil with a Caucasian woman, which raises an inference of discrimination. *See Johnson v. Keebler-Sinshine Biscuits, Inc.*, 214 Fed.Appx. 239, 242 (3d Cir. 2007) (finding this element satisfied upon a showing that a plaintiff was replaced by someone outside of his protected class). Plaintiff has carried his burden in establishing a prima facie case.

Defendants must now rebut the presumption of discrimination that Plaintiff has created. Defendants argue that Plaintiff did not comply with the terms of the PIP or improve his job performance despite numerous warnings. Defendants thus had no choice but to terminate Plaintiff. This legitimate nondiscriminatory reason rebuts the presumption of discrimination.

To establish pretext and avoid summary judgment, Plaintiff need only discredit Defendants' proffered nondiscriminatory reasons. *See Sempier*, 45 F.3d 724, 731; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Here, Dorvil contends that Defendants had never disciplined him before issuing the PIP. (*See* Pl.'s L.Civ.R. 56.1(a) Statement at ¶ 55) Therefore, a reasonable inference could be that the PIP, of which Fagan was a proponent, was implemented not because Dorvil was actually performing badly, but due to racial animus. Fagan had previously referred to Dorvil as the Hatian Black and the Creole, made inappropriate racial comments, frequently belittled Dorvil for

10

his accent, and undermined Dorvil's ability to effectively supervise his employees. A reasonable jury could conclude that Fagan terminated Dorvil for discriminatory reasons despite Dorvil's satisfactory work performance.

Because Dorvil can show pretext, summary judgment is inappropriate and the Motion will be denied with respect to the discrimination claims.

### 2.

The Court must apply the same burden shifting analysis in a retaliation claim brought under § 1981 and the LAD. To establish a prima facie case Plaintiff must show by a preponderance of the evidence: "(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Hutchins v. United Parcel Service, Inc.*, 197 Fed.Appx. 152, 156 (3d Cir. 2006) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

First, Defendants argue that Plaintiff cannot establish that he engaged in protected activity because Dorvil's complaint of October 8, 2009 was not made reasonably and in good faith. In support of this argument, Defendants note that Plaintiff did not complain until after Defendants instituted the PIP. However, this is unsurprising considering Plaintiff contends that he never

suffered any disciplinary action before the PIP.  Plaintiff could have decided to endure the racial discrimination in silence to placate his superior.  When it appeared that his job was in jeopardy due to unexpected disciplinary actions, Plaintiff could have decided to lodge a complaint.  Because the timing of the complaint does not indicate a lack of good faith and reasonableness, the first element is satisfied.

Defendants do not challenge the second element.

Third, Defendants argue that there is no causal connection between the protected activity and Dorvil's termination.  Although a plaintiff may show causation in many ways, two are particularly significant: (1) timing, and (2) a pattern of antagonism.  *See Kachmar v. SubGuard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

In this case, one month passed between the complaint and Dorvil's termination.  Although one month is not conclusive, it is certainly suggestive of retaliation.  In conjunction with other evidence of overall antagonism, however, the causal link is strong enough to establish a prima facie case.[8]  For example, Fagan terminated only Dorvil for alleged performance issues for

---

[8] Indeed, a reasonable jury could disbelieve Defendants assertions that Dorvil had any performance issues considering Dorvil's long unblemished history at BCF.  Taking the record as a whole, Fagan could have terminated Dorvil, using the PIP as a mere pretext.  *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283 (3d Cir. 2000) ("[T]he court can consider circumstantial evidence and draw inferences in favor of the non-moving party in reaching [a causation] determination on summary judgment.").

which several managers had responsibility.[9] (*See* Pl.'s L.Civ.R. 56.1(a) Statement at ¶¶ 82-87)  Moreover, Dorvil's Caucasian replacement has made the same errors alleged against Dorvil yet the replacement has not been put on a PIP or otherwise disciplined. (*Id.* at ¶ 85)

Having established a prima facie case, Defendants must rebut the presumption of retaliation with a nondiscriminatory reason for terminating Dorvil.  Defendants allege that after the month long PIP, Plaintiff had not improved his work performance.  Therefore, Defendants terminated Plaintiff for unsatisfactorily performing his job, not due to protected activity.  This reason suffices to shift the burden back to Plaintiff.

Plaintiff must now show pretext by either identifying "(1) evidence that undermines the credibility of the employer's proffered reasons, or (2) evidence of retaliatory animus." *Waggaman v. Villanova University*, 2008 WL 4091015, *20 (E.D.Pa. 2008).  Plaintiff's mere assertions that the decision to terminate was erroneous does not establish pretext.  Rather, Plaintiff must provide evidence that a reasonable fact finder could disbelieve the employer's evidence. *Id.*  Pretext can be

---

[9] Indeed, some of the performance issues Defendants allege were a direct result of Fagan's discriminatory behavior such as not being invited to important meetings and undermining Dorvil's supervisory authority in front of his employees.  If the PIP was a result of these "performance issues," and Dorvil's formal complaint was the result of the PIP, then there must also be a causal connection between the PIP, the formal complaint and Dorvil's termination.

13

shown here largely for the same reasons as for the claim of discrimination.  A reasonable fact finder could disbelieve that the PIP was truly motivated by Dorvil's poor performance considering the wealth of evidence indicating prior satisfactory performance.  The jury could instead conclude that Fagan, who on multiple occasions made discriminatory comments towards Dorvil, instituted the PIP for discriminatory reasons, and when Dorvil complained, Fagan used the PIP as a pretext to terminate Dorvil.

Accordingly, the Motion will be denied because Dorvil can show pretext.

### B.

Hostile work environment claims do not use the burden shifting analysis above.  Instead, to establish a claim, Plaintiff must show that: (1) Plaintiff suffered intentional discrimination due to his status in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally a reasonable person in the same situation; (5) a basis for employer liability.  *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995).  The Court must analyze the totality of the circumstances, not the occurrence of any one incident.  *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 2006).

14

Defendants only challenge the second element - whether the discrimination was pervasive and regular.  Defendants argue that Fagan's two isolated August and October 2009 comments are not severe or pervasive enough to be actionable.  However, this argument fails to account for Fagan's weekly belittling comments regarding Dorvil's accent.  A reasonable jury could find that these comments in conjunction with Fagan failing to invite Dorvil to meetings, revoking Dorvil's company car privileges and constantly undermining Dorvil's authority was pervasive and regular discrimination.[10]  Although no one incident may have been enough, all of the circumstances together indicate pervasive and regular discrimination.

Therefore, the Motion will be denied with respect to the hostile work environment claim.

### C.

Defendants urge this Court to dismiss Plaintiff's WPL claim because Plaintiff failed to address Defendants' arguments in its brief.  Defendants argued that Plaintiff would not be entitled to unused vacation time because he was terminated for poor performance.[11]  However, as the discussion indicates above,

---

[10] While a jury may conclude that Fagan took these actions simply because he did not get along with Dorvil, for the purposes of summary judgment, the Court must infer that racial animus motivated these actions.

[11] Defendants argue that the terms of the benefits agreement would be binding.

15

Defendants have not yet established that Plaintiff was terminated for poor performance.  Indeed, a reasonable fact finder could determine that Defendants wrongfully terminated Plaintiff on the basis of race, which Defendants do not dispute would entitle Plaintiff to recover.  Accordingly, Defendants' Motion will be denied with respect to the WPL claim.

**IV.**

For the foregoing reasons Defendants' Motion for Summary Judgment is denied.

Dated: 10/14/11

    /s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J.**